# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**Joel Montgomery and M and M Aviation,**

      *Plaintiffs*,

v.

**Mary L. Sanders, the United States of America, General Dynamics, the United States Department of Defense and the Department of the United States Air Force,**

      *Defendants*.

Case No. 3:07-cv-470
Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING DEFENDANT GENERAL DYNAMICS ADVANCED INFORMATION SYSTEMS, INC.'S MOTION TO DISMISS COUNTS I AND VIII.** (DOC. 33).

---

Pending before the Court is Defendant General Dynamics Advanced Information Systems, Inc.'s Motion to Dismiss Counts I and VIII. (Doc. 33). Therein, General Dynamics Advanced Information Systems ("GDAIS") asserts that Plaintiffs' Privacy Act, 5 U.S.C. § 552a, and Freedom of Information Act, ("FOIA"), 5 U.S.C. § 552, claims against GDAIS should be dismissed because, GDAIS asserts, these laws do not apply to private enterprises that have contracts with the federal government. Plaintiffs counter that GDAIS is a government agency by virtue of being a "government controlled corporation" under these statutes. Because the allegations in the complaint do not lead to the conclusion that these statutes apply to GDAIS, the motion will be granted.

**I.      Background**

According to the complaint, Plaintiff Joel Montgomery was employed from June 2002 through February 2004 as a Program Manager in charge of the Electro-Optical Materials Intelligence Group of GDAIS, a Department of Defense industry contractor to the U.S. Air Force National Air and Space Intelligence Center, a subordinate command of the U.S. Air Force Air Intelligence Agency at Wright Patterson Air Force Base. (Cmplt. p. 2, ¶ 4.)

General Dynamics employed Defendant Mary Sanders from June 2002 through June 2004, as a Facility Security Officer, with duty at the Air Force National Air and Space Intelligence Center at Wright-Patterson Air Force Base. (Cmplt. p. 3, ¶ 5.) Plaintiff alleges that between August 2003 and February 2004, unbeknownst to Montgomery until July 30, 2007, Sanders, on behalf of GDAIS, intentionally filed a series of allegedly false reports about Montgomery with the Department of Defense, the Office of the Inspector General, the Defense Security Service, a subordinate component of Department of Defense, and the Defense Industrial Security Clearance Office, a subordinate component of Department of Defense. These reports include claims that Montgomery boasted that he had classified documents at his home, claimed to have brought weapons to work and that he had stockpiles of weapons and ammunition at his home, and an admission that he was recently convicted of "reckless operation" of a motor vehicle.

In September 2005, GDAIS put Montgomery on leave without pay. In February 2006, GDAIS terminated Montgomery's employment citing information reported against him. Montgomery requested all the alleged information from his file which was used as the basis of his discharge from employment. GDAIS did not respond to his request and allegedly withheld or misrepresented the information Montgomery requested.

Montgomery operated and co-owned M and M Aviation, a business partnership under the laws of Ohio. On June 6, 2006, the U.S. Air Force contracted with M and M Aviation to provide it services in the area of tactical and theater missile warning systems. Montgomery performed services on behalf of M and M Aviation under this contract beginning June 15, 2006. (Cmplt. p. 5, ¶ 20.)

On March 15, 2007, Montgomery requested from the Department of Defense and the Air Force his personnel record, including any reports of investigations into the allegations against him. He also requested that these agencies amend Montgomery's record to correct any and all falsehoods, misstatements and errors in his record. This was apparently denied.

On June 11, 2007, Montgomery appealed the denial of the requested information through the department of Defense and the Air Force. In response, on July 18, 2007, Department of Defense, Office of the Inspector General provided Montgomery a redacted record of a complaint believed to be filed by Sanders. (Cmplt. pp. 4-5, ¶¶ 11, 15.) On July 30, 2007, "DDS"[sic] provided to Montgomery a redacted report of information filed by Sanders and verifying that Sanders initiated the accusations against Montgomery. (Cmplt. p. 5, ¶ 16.)

Plaintiff alleges that from September 13, 2007, Defendants have refused Montgomery, the principal employee of M and M Aviation, access to his place of employment for M and M Aviation, Hanger 4B at Wright-Patterson Air Force Base, and likewise, denied Montgomery access to his Wright-Patterson Air Force Base issued contractor computer account with Air Force Research Laboratory at the Wright-Patterson Air Force Base. (Cmplt. p. 6, ¶ 23.) M and M Aviation has been forced to default on its contract with the U.S. Air Force because Montgomery has been denied access to his computer account, access to the building in which he works, and his security clearance

was suspended due to the reports submitted by Sanders on behalf of GDAIS. Montgomery's loss of his security clearance and M and M Aviation's subsequent loss of its Government contract resulted in lost wages for Montgomery and lost profits for M and M Aviation. (Cmplt. p. 6, ¶¶ 24, 25.)

On December 21, 2007, Montgomery and M and M Aviation filed the instant action in the United States District Court for the Southern District of Ohio. The first count charges the United States Department of Defense and the United States Air Force violated Montgomery's rights under the Privacy Act, 5 U.S.C. §552a(d)(1), (2) and/or (3), and §552a(e)(1), (2), (5) and (10); the second count asserts Sanders and GDAIS committed defamation, slander and libel per se under Ohio law; the third count requests an order of Mandamus to the United States Department of Defense and the United States Air Force that they complete their investigation of the allegations against Montgomery; the fourth count requests a mandamus order commanding the United States Air Force Reserve to reassign Montgomery and rescind a "non-participation order" that allegedly has issued against him; the fifth claim asserts tortious interference with contract against Sanders and GDAIS for the repercussions Sanders's reports had with Montgomery's employment with GDAIS and M and M Aviation; count six asserts tortious interference with the contract M and M Aviation had with GDAIS; count seven asserts intentional infliction of emotional distress against Sanders and GDAIS, and count VIII asserts all defendants violated the Freedom of Information Act 5 U.S.C. § 552(a)(3). The Court previously granted Defendant's motion to dismiss counts II through VII.

## II.     Standard of Review

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514

(2002); *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Roth Steel Products v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir. 1983). When determining the sufficiency of a complaint in the face of a motion to dismiss, the court must apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957); see also, *Swierkiewicz*, 534 U.S. at 514, *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232 (1980); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983).

A motion to dismiss under Rule 12(b)(6) is directed solely to the complaint itself. *Roth Steel Products,* 705 F.2d at 155. The Court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. *Scheuer,* 416 U.S. at 236. A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted. *Roth Steel Products,* 705 F.2d at 155. The Court will grant a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the complaint is without merit because of an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. See generally *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978); *Gravely v. Madden*, 964 F. Supp. 260, 261 (S.D. Ohio 1995).

### III.    Analysis

General Dynamics Advanced Information Systems, Inc., ("GDAIS") has moved the Court to dismiss Counts I and VIII, Plaintiff's Privacy Act, 5 U.S.C. § 552a, and Freedom of Information

Act, 5 U.S.C. § 552, claims, on the bases that both claims arise under statutes inapplicable to federal contractors and because GDAIS believes it enjoys absolute immunity from both claims. Doc. 33.

The first count of the complaint asserts that the United States Department of Defense and the United States Air Force and GDAIS[1] violated the Privacy Act by denying his request for records that relate to him. See Compl. at ¶ 27. In Count VIII, Plaintiff claims that the Department of Defense, the Air Force and GDAIS violated the FOIA by denying his request for disclosure of information. See Compl. at ¶ 67-68.

Both the Privacy Act and FOIA permit individuals to gain access to certain records or information contained in systems of records maintained by an " agency." 5 U.S.C. §§ 552 and 552a *et seq.* These statutes define the term "agency" to "include[] any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President) or any independent regulatory agency." 5 U.S.C. § 552(f)(1); see also 5 U.S.C. § 552a(1). Because the Privacy Act at 5 U.S.C. § 552a utilizes the definition of FOIA in 5 U.S.C. § 552 to define "agency," the question of whether GDAIS is an agency for either of these statutes can be analyzed simultaneously.

"The private right of civil action created by [the Privacy Act and FOIA] is specifically limited to actions against agencies of the United States Government." *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir. 1985) (citations omitted). As a result, federal court jurisdiction is dependent upon a showing that an *agency* has (1) improperly (2) withheld (3) *agency records*. See

---

[1] The parties implicitly agree that GDAIS is a defendant in Count I, although Count I lists as Defendants to that claim: "DODIG, DSS, DISCO, OPM, OSI, NRO, and RMG...."

*Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (emphasis added). According to Plaintiff, GDAIS is, therefore, subject to the requirements of 5 U.S.C. §552(a)(e) and the penalties of the Privacy Act and the Freedom of Information Act.

GDAIS contends that private corporations like GDAIS do not fall within the definition of "agency" for purposes of the Privacy Act or FOIA. Montgomery counters that GDAIS and its Electro-Optical Materials Intelligence Group is a "government controlled corporation" within the definition of "agency" under 5 U.S.C. §552(f) because it allegedly performed a highly-controlled government function in guarding access to classified information while operating under extensive government regulations and maintaining records of this work within a "system of records."

In order to determine whether an entity is a Government-controlled corporation under the Privacy Act or FOIA, courts consider the following factors: whether the entity performs a governmental function; whether there is substantial government control over the entity's day to day operations; whether the entity has the authority to make and implement decisions on behalf of the government; whether the entity's employees are in reality federal employees; the government's financial involvement with the entity; and whether the entity is federally chartered. *Birch v. Pioneer Credit Recovery, Inc.*, 2007 WL 1703914 at *3 (W.D.N.Y. June 8, 2007) (citing *Forsham v. Harris*, 445 U.S. 169, 180 (1980); *Public Citizen Health Research Group v. Dep't of Health, Educ. and Welfare*, 668 F.2d 537 (D.C. Cir. 1981); and *Railway Labor Executives' Ass'n v. Consol. Rail Corp.*, 580 F. Supp. 777, 778-79 (D.D.C. 1984)).

1.      **Whether GDAIS performs a traditional Government function**

The first factor is whether the entity performs a governmental function (which can move the needle toward Privacy Act and FOIA coverage), or performs a function that has traditionally been

performed by private entities. *Birch*, 2007 WL 1703914, at *3. Plaintiff suggests that GDAIS performed functions for the Government "relating to and requiring security clearances," which are traditional governmental functions. While it is true that decisions concerning whether an individual should hold a U.S. Government security clearance is a traditional governmental function, Plaintiff does not allege that GDAIS made any decisions concerning his security clearance. Indeed, Plaintiff highlights that fact that "GDAIS admits that it does not have independent legal authority to decide whether to revoke, deny, or grant access to classified information on behalf of the government." See Pl. Opp. at 10; see also, e.g., *Dep't of Navy v. Egan*, 484 U.S. 518, 527-30 (1988) (holding that the grant or denial of a security clearance to a particular employee is committed by law to the appropriate executive branch agency having the necessary expertise in protecting classified information).

In actuality, however, the "function" of GDAIS about which Plaintiff complains is the report GDAIS employee Mary Sanders made about him to the U.S. Government. See Compl at ¶ 9; Ex. A thereto. Moreover, Plaintiff does not allege that any of the other functions GDAIS performed for the Government are traditional governmental functions.

Plaintiff details regulations according to which GDAIS must abide: Department of Defense Manual 5220.22M; Department of Defense Directive 5220.22; Department of Defense Directive 5220.6; Department of Defense Directive 5200.2-R; 32 C.F.R. § 154.56; 32 C.F.R.§ 155, Appendix A; 32 C.F.R. §§ 154.56(b)(1) and 154.61(e); 5 U.S.C. § 7532; Executive Order No. 12,968 § 5.2(1), (5); 5 U.S.C. §552 and 5 U.S.C. §552a. Most notably, 5 U.S.C. § 552a(m)(1) and 5 U.S.C. § 552a(e)(5) are only relevant if GDAIS is a government agency.

The bottom line, however, is that GDAIS and its Electro-Optical Materials Intelligence Group does not make security clearance decisions of its own accord, rather, they abide by regulations by which Department of Defense issues. The "threshold showing of substantial federal supervision of the private activities, and not just the exercise of regulatory authority necessary to assure compliance with the goals of the federal grant." *Forsham v. Harris*, 445 U.S. 169, 180 n.11(1980) (citing *United States v. Orleans*, 425 U.S. 807 (1976)). Proof that GDAIS abides by government security regulations would not render GDAIS a government controlled corporation.

**2.    Whether the Government substantially controls GDAIS's day-to-day operations**

Plaintiff next argues that, because the government extensively regulates the area of security clearance matters, GDAIS's information security program is "practically operated by the government." See Pl. Opp. at 9. There are no allegations in Plaintiff's complaint to support the notion that the required degree of government control over GDAIS's day-to-day operations is present. "[A]lleging that the federal government may control defendant to some degree because of contractual arrangements does not satisfy the critical requirement that plaintiff allege and prove that the federal government controls defendant's day-to-day operations to such an extent that it is being virtually operated by the federal government." *Birch*, 2007 WL 1703914 at *3. A government contractor's mere compliance with federal statutes or regulations does not convert it into a "Government-controlled corporation." See *Birch*, 2007 WL 1703914 at *4 ("It is well established that merely having a contractual relationship with the federal government that includes government oversight and requires compliance with regulations does not establish the degree of control necessary for an entity to be considered a government controlled corporation.") (citing *St. Michael's Convalescent Hosp. v. State of Cal.*, 643 F.2d, 1369, 1373-74 (9th Cir. 1981)).

**3.     Whether GDAIS has authority to make decisions for the Government**

This factor is satisfied only if the "alleged government controlled corporation has independent legal authority to make decisions for [the] agency that allegedly controls it." See *Birch*, 2007 WL 1703914 at *4 (internal citation omitted). The Complaint makes no allegations that GDAIS has any legal authority to make decisions for the Government. To the contrary, Plaintiff highlights the fact that" GDAIS admits that it does not have independent legal authority to decide whether to revoke, deny, or grant access to classified information on behalf of the government." See Pl. Opp. at 10.

**4.     Whether GDAIS employees are federal employees**

In order to satisfy this factor, Plaintiff must demonstrate that GDAIS's "employees are in reality federal employees," which would be the case, for example, if its "employees [we]re subject to civil service regulations." See *Birch*, 2007 WL 1703914 at *5. Plaintiff suggests that because the government controls who is granted, denied, or suspended access to classified information, "it consequently controls who GDAIS may hire or fire." See Pl. Opp. at 10. Such a qualification, however, is a far cry from controlling hiring and firing. Because Plaintiff does not allege that the U.S. government controls who GDAIS hires or fires (as opposed to who may have access to classified information), this factor weighs against him.

Plaintiff does not address the remaining factors: the government's financial involvement with the entity; and whether the entity is federally chartered.

The Court concludes that, assuming the veracity of all allegations in the complaint, GDAIS lacks the attributes considered significant in determining whether an entity is a government-controlled corporation under the Privacy Act or FOIA. Indeed, Plaintiff has not alleged facts

sufficient to support a finding that any of the factors weigh in his favor. Accordingly, Plaintiff's claims under the Privacy Act and FOIA against GDAIS will be dismissed. Because this determination is dispositive of GDAIS's motion, the Court need not determine whether Plaintiff's Privacy Act and FOIA Claims against GDAIS are barred by the Doctrine Of Absolute Immunity.

## IV.  Conclusion

Because GDAIS is not an "agency" under FOIA or the Privacy Act, Counts I and VIII of the Complaint against GDAIS are **DISMISSED**. These two counts remain against the United States of America, the United States Department of Defense and the Department of the United States Air Force.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, December 15, 2008.

s/Thomas M. Rose
───────────────────────────────
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE