IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JOEL B. MONTGOMERY, et al.,

      Plaintiffs,        :        Case No. 3:07-cv-470

  -vs-        Magistrate Judge Michael R. Merz

       :

MARY L. SANDERS, et al.,

      Defendants.

## DECISION AND ORDER DENYING PLAINTFFS' MOTION TO RECONSIDER GRANTING LEAVE TO AMEND

This case is before the Court on Plaintiffs' Motion to Reconsider (Doc. No. 140) which seeks reconsideration of the Court's Decision and Order of December 7, 2011, to the extent that it denied Plaintiff's leave to file a third amended complaint adding Debra L. Kyle as a defendant and asserting against her a claim for deprivation of a liberty interest under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Defendants oppose the Motion (Doc. No. 147) and Plaintiffs have filed a Reply Memorandum in Support (Doc. No. 156).

Defendants do not dispute the Court's authority to reconsider the decision, interlocutory in nature, to deny a motion to amend. Prejudgment orders remain interlocutory and can be reconsidered at any time." Moore's Federal Practice ¶0.404 (1982). However, "[a]s a general principle, motions for reconsideration are looked upon with disfavor unless the moving party demonstrates: (1) a manifest error of law; (2) newly discovered evidence which was not available previously to the parties; or (3) intervening authority." *Meekison v. Ohio Dept. Rehab. & Corr.*,

1

181 F.R.D. 571, 572 (S.D. Ohio 1998)(Marbley, J.), rev'd on other grounds, 67 Fed. Appx. 900 (6th Cir. 2003), quoting *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied,* 476 U.S. 1171 (1986).  Plaintiffs do not cite any newly discovered evidence or intervening authority, so they must implicitly be asserting a manifest error of law.  Nor do they assert the Court applied an erroneous procedural standard to their Motion.  (See Decision and Order, Doc. No. 132, PageID 1875, citing *Foman v. Davis*, 371 U.S. 178 (1962), and its progeny.)

> Defendants objected to the proposed amendments on the grounds that
>
>> Montgomery does not have a liberty interest in maintaining a security clearance or having an investigation adjudicated so that he may have his clearance reinstated, that Plaintiffs' proposed *Bivens* action is precluded by the APA, that the nature of Plaintiffs' claims foreclose a *Bivens* remedy, that Ms. Kyle is entitled to qualified immunity, and that the Court should deny the Motion for reasons of judicial economy.

(Decision and Order, Doc. No. 132, PageID 1875, citing Defendants' Memo in Opp., Doc. No. 118).  Applying *Foman* and considering Defendants' objections, the Court concluded that the amendment would be futile because the *Bivens* claim was found to be a disguised attempt to have this Court review the merits of the suspension of Montgomery's security clearance and the Administrative Procedures Act precludes a *Bivens* action in these circumstances.  *Id.* at PageID 1876.

In their Motion to Reconsider, Plaintiffs plainly concede that judicial review of the merits of revocation of Montgomery's security clearance is preclude by *Department of Navy v. Egan*, 484 U.S. 518 (1988) (Motion, Doc. No. 140, PageID 1928).  Despite that concession, Plaintiffs assert "[b]oth the Supreme Court and numerous other courts have held that a District Court possesses the authority to review a claim that an agency violated its own procedural regulations in making a security clearance determination." *Id.*  The authority relied on by Plaintiff is

reviewed below *seriatim.*

In *Webster v. Doe,* 486 U.S. 592 (1988), the Supreme Court held that 5 U.S.C. § 706 precluded judicial review of the CIA's termination of Doe, but that § 102(c) of the National Security Act of 1947 (50 U.S.C. § 403(c)) did not preclude district court jurisdiction over a claim that the discharge was unconstitutional.  The case was not a *Bivens* action against CIA Director Webster and does not discuss whether such an action might be available.  Webster does not provide authority for the claim Montgomery seeks to make against Kyle.

*Service v. Dulles*, 354 U.S. 363 (1957), involved termination of employment of a foreign service officer.  The Supreme Court reversed the termination because the Department of State had not followed its own regulations.  Service involved no *Bivens* action for the obvious reason that it was decided fourteen years before *Bivens* was handed down.

In *Romero v. Department of Defense*, 527 F.3d 1324 (Fed. Cir. 2008), the plaintiff was discharged for failing to maintain his security clearance.  The court of appeals reversed a decision of the Merit Systems Protection Board which had upheld the discharge on the grounds that it could not review the merits of the underlying security clearance revocation, holding the MSPB could review "the procedural validity of the security clearance revocation."  Again, no *Bivens* claim was involved.

*Cheney v. Department of Justice*, 479 F.3d 1343 (Fed. Cir. 2007), is another successful appeal by a terminated employee from an MSPB decision upholding his termination.  No *Bivens* claim was made.

In *Duane v. Department of Defense*, 275 F.3d 988 (10th Cir. 2002), the court of appeals upheld dismissal of an employee's complaint for wrongful revocation of his security clearance, finding the department did not violate its own regulations when it revoked the clearance.  No

*Bivens* claim was involved.

In *Stehney v. Perry*, 101 F.3d 925 (3rd Cir. 1996), plaintiff sought mandamus to compel restoration of her security clearance and reinstatement to her position. The court of appeals affirmed dismissal for lack of standing, lack of subject matter jurisdiction, and failure to state a claim upon which relief could be granted. Stehney was employed by the Institute for Defense Analyses, a private entity contracting to perform work for the National Security Agency. NSA required persons holding positions similar to her to be subject to periodic polygraph examinations. Her clearance was revoked and her employment terminated when she refused to do so. She made constitutional claims that NSA had deprived her of a constitutionally protected interest without due process of law, that its polygraph requirement violated her Fourth Amendment rights, and that the exemption of certain other mathematicians from the polygraph requirement violated Equal Protection. Although there were no *Bivens* claims, the court upheld dismissal of all the constitutional claims made.

*King v. Alston,* 75 F.3d 657 (Fed. Cir. 1996), is a reversal of an MSPB decision reversing the Department of the Navy's enforced leave decision regarding an employee whose access to classified information was suspended. No *Bivens* claim was involved.

In *Hill v. Department of the Air Force*, 844 F.2d 1407 (10th Cir. 1988), a former employee obtained an injunction from the district court requiring the reinstatement of his security clearance. The court of appeals reversed, holding the district court had no jurisdiction to compel reinstatement of the security clearance. The court also expressly held that Hill had no "constitutional or property interest in his security clearance." *Id.* at 1411. The court's fuller constitutional analysis is pertinent:

> The Executive Branch has constitutional responsibility to classify
> and control access to information bearing on national security. A

4

security clearance is merely temporary permission by the Executive for access to national secrets. It flows from a discretionary exercise of judgment by the Executive as to the suitability of the recipient for such access, consistent with the interests of national security. The notion of an individual property right in access to the nation's secrets -- by definition a limitation on Executive discretion -- is utterly inconsistent with those principles. Whatever expectation an individual might have in a clearance is unilateral at best, and thus cannot be the basis for a constitutional right. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972).

Hill emphasizes the existence of procedural rules which have been developed by the Department of Defense and the various military agencies relating to the suspension and potential revocation of an existing clearance. Dept. of Defense Regulation 5200.2R/Air Force Regulation (AFR) 205-32 (Nov. 26, 1982). Those procedures are not the type of "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972). *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538-541, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985); *Paul v. Davis*, 424 U.S. 693, 709, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976). The procedures are administrative devices which are indeed intended to promote fairness and safeguard the rights of individual employees, but are not intended thereby to diminish Executive authority rooted in Executive responsibility. If the courts attempt to attach constitutional rights to security clearances because rules have been promulgated to better administer employee relations, it will provide a disincentive for government agencies "to continue improving the mechanisms by which an aggrieved employee can protect his rights." *Bush v. Lucas*, 647 F.2d 573, 577 (5th Cir. Unit B June 1981) *aff'd*, 462 U.S. 367, 103 S. Ct. 2404, 76 L. Ed. 2d 648 (1983). *See also Broadway v. Block*, 694 F.2d 979 (5th Cir. 1982).

The foregoing discussion applies as well to the question of a liberty interest where Hill is concerned, with an additional explanation. The district court found that suspending Hill's clearance, creating a file showing the suspension, and disseminating such information, impugned Hill's standing and reputation and limited his ability to secure employment. *Egan* compels a different view: "A clearance does not equate with passing judgment upon an individual's character." *Egan*, 484 U.S. at 528. The same is true of a suspension. Furthermore, potential dissemination of the underlying reasons for the suspension, thus

5

> possibly damaging Hill's employability, was overshadowed in any event by the fact of and reasons for Hill's discharge. Full due process and a name-clearing opportunity were provided Hill in that regard. The reasons for both suspension and discharge were the same as was, presumably, their impact, if any, on Hill's ability to secure employment based on his character and reputation. The Air Force could not, and should not, be prohibited from communicating to prospective employers who do work for the government the facts underlying Hill's discharge. Finally, the suspension itself neither deprived Hill of his employment, since he remained employed until removed for misconduct, nor "foreclosed" other employment opportunities. *See Board of Regents v. Roth*, 408 U.S. 564, 573-74, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1971). Upon seeking employment in the private sector which requires a security clearance Hill is free to apply to the Defense Industrial Security Clearance Office for a clearance, and to receive a full hearing if denial of a clearance is proposed. In short, there was nothing in the suspension itself which implicated a liberty interest.

*Id.* at 1411-1412. The quoted language comes just before that relied on by Plaintiffs at PageID 1929: "Constitutional questions aside . . ." But it is constitutional questions which Plaintiffs seek to litigate in their proposed third amended complaint.

In *Mangino v. Department of the Army*, 818 F. Supp. 1432 (D. Kan. 1993), a former sergeant in the United States Army sued the Army and the Defense Investigative Service for revocation of his security clearance. The case was dismissed upon a finding that there was no constitutional right attached to a security clearance. The court followed the Tenth Circuit in *Hill, supra*, in concluding that the procedural rights attached to a security clearance did not give rise to constitutional rights related to the clearance. No *Bivens* claim was involved.

In sum, none of the cases cited by Plaintiffs recognize a right to a *Bivens* action against a government actor for her behavior in a security clearance revocation proceeding. The rights to various procedures in processing a security clearance revocation are regulatory, not constitutional; deprivation of those rights does not deprive a person of anything to which he or

she is entitled by the United States Constitution.

A point raised by Defendants but not discussed in the original Decision and Order is Kyle's qualified immunity.  Briefly stated, government officials performing discretionary functions are afforded a qualified immunity under 42 U.S.C. §1983 as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir., 1994); *Flatford v. City of Monroe*, 17 F.3d 162, 166 (6th Cir. 1994).

Qualified immunity analysis involves three inquiries: (i) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005), *quoting Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). Qualified immunity must be granted if the plaintiff cannot establish each of these elements. *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004).

In deciding qualified immunity questions, district courts were for some years required to apply a two-part sequential analysis, first determining whether the alleged facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right, and then deciding if the right was clearly established at the time the officer acted. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004), *Estate of Carter v. City of Detroit,* 408

F.3d 305, 310-11 (6th Cir. 2005), and *Klein v . Long,* 275 F.3d 544, 550 (6th Cir. 2001), *both citing Saucier v. Katz*, 533 U.S. 194, 201 (2001).  However, the two-step process is no longer mandated in light of experience with its use; trial judges are now permitted to use their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Therefore a district court is free to consider these two qualified immunity questions in whatever order is appropriate. *Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009).

While Ms. Kyle has not technically pled the affirmative defense of qualified immunity because she has not yet been added as a party and the third amended complaint has not been filed, it is appropriate for the Court to consider the qualified immunity defense in deciding whether the amendment would be futile, particularly since objection has been made on that basis by the United States Attorney representing existing Defendants.

The Court concludes the amendment would be futile because Kyle would be entitled to qualified immunity.  Plaintiff Montgomery has not shown that any acts of Ms. Kyle violated any of his constitutional rights, much less that any such rights were clearly established with the requisite degree of particularity at the time she acted.

The foregoing analysis does not address Plaintiffs' claims that the process by which his security clearance was revoked is subject to judicial review.  That is separate from the question of whether Ms. Kyle's actions give rise to a *Bivens* claim for deprivation of constitutional rights, the claim sought to be added by the proposed third amended complaint.

Plaintiffs have failed to show that the Court committed a manifest error of law in denying their Motion for Leave to File a Third Amended Complaint. Accordingly, their Motion to Reconsider is DENIED.

March 18, 2013.

s/ *Michael R. Merz*<br>
United States Magistrate Judge